******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

ADALBERTO VAZQUEZ *v.* COMMISSIONER
OF CORRECTION
(AC 46682)

Bright, C. J., and Elgo and Cradle, Js.*

*Syllabus*

The petitioner, who had been convicted of crimes he committed in 2005, including conspiracy to commit murder, appealed following the denial of his petition for certification to appeal from the habeas court's judgment dismissing his habeas petition. The petitioner claimed that the respondent, the Commissioner of Correction, had misinterpreted and misapplied certain 2013 amendments to the statute (§ 54-125a) pertaining to parole eligibility hearings, as set forth in Nos. 13-3 and 13-247 of the 2013 Public Acts (P.A. 13-3 and P.A. 13-247), which made parole eligibility hearings discretionary rather than mandatory and eliminated the application of risk reduction credits pursuant to statute (§ 18-98e) to advance the parole eligibility date of inmates convicted of certain violent crimes, including conspiracy to commit murder. *Held*:

The habeas court did not abuse its discretion in denying the petitioner certification to appeal, as he failed to show that his claims involved issues that were debatable among jurists of reason, that a court could resolve them in a different manner or that they were adequate to deserve encouragement to proceed further.

The habeas court did not commit clear error, as the petitioner claimed, when it adopted a prior habeas court's finding that it lacked subject matter jurisdiction over his habeas petition and that he had failed to state a claim on which relief could be granted, as the commencement of his probationary period in 2021 did not render his petition or the present appeal moot, and had no bearing on the propriety of the court's judgment, which was not based on mootness.

The habeas court correctly concluded that it lacked subject matter jurisdiction over the petitioner's due process and state liberty interest claims, as he did not have a constitutionally protected liberty interest in earned risk reduction credits or in having such credits applied to further his parole eligibility date under §§ 18-98e and 54-125a, and the respondent's decision as to whether to award those benefits was discretionary in nature.

The respondent's retroactive application of P.A. 13-247 to the petitioner did not, as he claimed, violate the federal constitution's ex post facto clause,

* The listing of judges reflects their seniority status on this court as of the date of oral argument.

the petitioner having committed his crimes prior to the passage of No. 11-51 of the 2011 Public Acts, which amended § 54-125a to limit inmates' parole eligibility.

The habeas court properly dismissed the petitioner's claim that the respondent's application to him of § 54-125a, as amended by P.A. 13-3, violated the separation of powers doctrine, as the petitioner's claim was speculative in that it was possible that he would never be required to serve the suspended portion of his sentence.

The habeas court properly determined that the petitioner failed to state a claim that his right to equal protection was violated, as there was a rational basis for excluding indigent individuals held in presentence confinement from the risk reduction credit program.

The respondent's retroactive application to the petitioner of P.A. 13-247 did not violate the petitioner's statutory (§ 55-3) right against the retrospective effect of new statutory obligations, as the petitioner, who was serving a period of probation at the time, was not eligible for parole.

The habeas court properly dismissed the petitioner's claim that the respondent incorrectly interpreted § 18-98e to exclude a retroactive award of risk reduction credit for the time the petitioner had spent in presentence confinement, as § 18-98e applies only to sentenced inmates.

The habeas court properly dismissed the petitioner's claim pertaining to his right to rely on governmental representations, as that claim was pleaded deficiently, and his claims sounding in breach of contract and promissory estoppel, which did not implicate a cognizable liberty interest.

Contrary to the petitioner's assertion, the habeas court had no obligation, sua sponte, to amend the petitioner's habeas petition following this court's reversal of a prior habeas court's judgment dismissing the petition and remanding the case for further proceedings, as it was through the petitioner's own neglect that he failed to act to amend the petition in the five weeks between this court's remand order and the habeas court's subsequent order identifying its proposed grounds for dismissal.

Argued November 20, 2024—officially released April 29, 2025

*Procedural History*

Amended petition for a writ of habeas corpus, brought to the Superior Court in the judicial district of Tolland, where the court, *Hon. Edward J. Mullarkey,* judge trial referee, rendered judgment dismissing the petition, from which the petitioner, on the granting of certification, appealed to this court, which, on the motion of the respondent with the agreement of the

petitioner, reversed the judgment and remanded the case for further proceedings; thereafter, the court, *Newson, J.*, rendered judgment dismissing the petition; subsequently, the court, *Newson, J.*, denied the petition for certification to appeal, and the petitioner appealed to this court. *Appeal dismissed.*

*Judie Marshall*, assigned counsel, for the appellant (petitioner).

*James M. Belforti*, assistant attorney general, with whom, on the brief, were *William Tong*, attorney general, and *Nicholas Pina*, certified legal intern, for the appellee (respondent).

*Opinion*

BRIGHT, C. J. Following the denial of his petition for certification to appeal, the petitioner, Adalberto Vazquez, appeals from the judgment of the habeas court dismissing his petition for a writ of habeas corpus. On appeal, the petitioner claims that the court (1) abused its discretion in denying his petition for certification to appeal and (2) improperly dismissed the habeas petition pursuant to Practice Book § 23-29. We conclude that the court did not abuse its discretion in denying the petition for certification to appeal and, therefore, dismiss the appeal.

The record reveals the following relevant facts and procedural history. On November 6, 2006, the petitioner pleaded guilty to conspiracy to commit murder in violation of General Statutes (Rev. to 2005) §§ 53a-48 and 53a-54a, and the court sentenced him to twenty years of incarceration, execution suspended after thirteen years, followed by five years of probation. The date of the offense was July 13, 2005. On August 21, 2007, the petitioner was convicted of attempt to commit assault in the first degree in violation of General Statutes §§ 53a-49 and 53a-59 (a) (5), and the court sentenced him to

five years of incarceration to run consecutively to his 2006 sentence. The date of the second offense was July 14, 2005.

At the time the petitioner committed the offenses, General Statutes (Rev. to 2005) § 54-125a (b) provided that a person convicted of a violent offense,[1] other than certain parole ineligible offenses, "shall be ineligible for parole . . . until such person has served not less than eighty-five per cent of the definite sentence imposed." Subsection (e) of the statute provided that the Board of Pardons and Paroles (board) "shall hold a hearing to determine the suitability for parole release of any [such] person . . . upon completion by such person of eighty-five per cent of such person's definite or aggregate sentence." General Statutes (Rev. to 2005) § 54-125a (e).

On July 1, 2011, nearly six years after the petitioner committed his offenses, General Statutes § 18-98e[2] became effective, which authorized the respondent, the Commissioner of Correction, to award, in his discretion, "risk reduction credit toward a reduction of an inmate's sentence . . . for positive conduct. General Statutes § 18-98e (a) and (b). The respondent also was vested with discretion to revoke such credit, even credit yet to be earned, for good cause. See General Statutes § 18-98e (b). At the same time, the legislature amended the

---

[1] Conspiracy to commit murder is a violent offense within the meaning of § 54-125a (b). See General Statutes § 54-125a (b) (2) (B) ("[a] person convicted of . . . an offense, other than [certain parole ineligible offenses], where the underlying facts and circumstances of the offense involve the use, attempted use or threatened use of physical force against another person shall be ineligible for parole under subsection (a) of this section until such person has served not less than eighty-five per cent of the definite sentence imposed").

[2] Although the legislature has amended § 18-98e since the events at issue; see Public Acts 2018, No. 18-155, § 3; Public Acts 2015, No. 15-216, § 9; those amendments have no bearing on the merits of this appeal. In the interest of simplicity, we refer to the current revision of § 18-98e.

parole eligibility provision to provide [that violent offenders] shall be ineligible for parole . . . until such person has served not less than eighty-five per cent of the definite sentence imposed *less any risk reduction credit earned under the provisions of section 18-98e.* . . . General Statutes (Rev. to 2011) § 54-125a (b) (2), as amended by Public Acts 2011, No. 11-51, § 25 (P.A. 11-51). The subsection of § 54-125a addressing parole hearings was similarly amended to account for earned risk reduction credit. General Statutes (Rev. to 2011) § 54-125a (e), as amended by P.A. 11-51, § 25. Accordingly, under the 2011 amendments, earned risk reduction credit was to be applied to an inmate's definite sentence to advance the inmate's end of sentence date, and the parole eligibility date calculated as a percentage of the sentence would advance in similar measure." (Emphasis in original; internal quotation marks omitted.) *Perez* v. *Commissioner of Correction*, 326 Conn. 357, 363–64, 163 A.3d 597 (2017).

After § 18-98e and the corresponding amendments to § 54-125a became effective, the petitioner earned risk reduction credits, which advanced both his end of sentence and parole eligibility dates. The legislature, however, again amended § 54-125a in July, 2013. See Public Acts 2013, No. 13-3, § 59 (P.A. 13-3); Public Acts 2013, No. 13-247, § 376 (P.A. 13-247). In P.A. 13-3, the legislature eliminated the language providing that an inmate's parole eligibility date would be advanced by the application of any earned risk reduction credit, and P.A. 13-247 "eliminated the requirement that the board 'shall' hold a parole hearing after such inmates had completed 85 percent of their definite or aggregate sentences. . . . Instead, under the revised statute, the board 'may' hold such a hearing, but '[i]f a hearing is not held, the board shall document the specific reasons for not holding a hearing and provide such reasons to such person. . . .' General Statutes (Supp. 2014) § 54-125a (e). Thus, under

the 2013 amendments, any risk reduction credit earned by an inmate, and not subsequently revoked, would still be applied to reduce his sentence, but would not be applied to advance his parole eligibility date. In other words, he would only be eligible for a hearing to determine whether he should be granted parole after he had served 85 percent of his *original* sentence . . . . Moreover, the board may decline to hold a hearing once that eligibility date arises." (Citation omitted; emphasis in original.) *Perez* v. *Commissioner of Correction*, supra, 326 Conn. 365.

The respondent recalculated the petitioner's parole eligibility date in accordance with the 2013 amendments, and the petitioner filed the underlying petition for a writ of habeas corpus as a self-represented party in 2014, requesting that the court correct his parole eligibility date. The court appointed counsel to represent the petitioner, and counsel filed the first amended petition on January 26, 2017, which included seventeen counts challenging the respondent's interpretation and application of the parole eligibility and earned risk reduction credit statutes, as amended by P.A. 13-3 and P.A. 13-247.[3]

---

[3] Specifically, the petitioner alleged that the retroactive application of P.A. 13-3 to him violated General Statutes § 55-3 (count one), his right to due process under the federal constitution (count four), the ex post facto clause of the federal constitution (count seven), his right of personal liberty (count nine), his right to the equal protection of the law under the federal constitution (count ten), his right to substantive due process under the state and federal constitutions (count eleven), and "his right to rely upon governmental representations, as protected by the due process clauses of the state and federal constitutions" (count twelve). In similar fashion, the petitioner alleged that the retroactive application of P.A. 13-247 to him violates § 55-3 (count two), his right to due process under the federal constitution (count three), the ex post facto clause of the federal constitution (count six), his right of personal liberty (count eight), and "his right to rely upon governmental representations, as protected by the due process clauses of the state and federal constitutions" (count thirteen). The petitioner also alleged that the respondent's interpretation and application of General Statutes §§ 18-98d and 18-98e to preclude the retroactive award of risk reduction credit for time he spent in presentence confinement violates his right to the equal

While his habeas petition was pending, our Supreme Court issued its decision in *Perez* v. *Commissioner of Correction*, supra, 326 Conn. 357, in which the court rejected claims similar to those raised by the petitioner in the present case. Specifically, the petitioner in *Perez*, who had committed his criminal offenses in 2010, claimed that P.A. 13-3 and P.A. 13-247 violated (1) his right to due process under the state and federal constitutions, (2) his right to personal liberty under article first, § 9, of the Connecticut constitution, and (3) the ex post facto clause in article first, § 10, of the federal constitution. Id., 369–70, 374. The petitioner in *Perez* further claimed that (1) the board's "policy of not awarding parole to any inmate whose parole eligibility date is within six months of the date on which the inmate will have completed serving his definite sentence" violates the separation of powers doctrine; id., 380–81; (2) § 54-125a, as applied to him, violates the equal protection clause of the federal constitution because violent offenders released on parole based on their advanced parole eligibility dates received the benefit of the 2011 legislation, whereas the petitioner would not receive that benefit; id., 382; (3) § 18-98e facially violates the equal protection clause because it precludes an award of earned risk reduction credit while an inmate is held in presentence confinement; id.; and (4) the respondent's interpretation of the 2013 amendments is contrary to the language of § 54-125a and the intent of the legislature. Id., 387.

protection of the law under the state and federal constitutions (count fourteen) and is contrary to the statutory text (count fifteen). The petitioner also asserted counts sounding in breach of contract (count sixteen) and promissory estoppel (count seventeen) based on his offender accountability plan. Last, the petitioner alleged that the policy of the board providing that the board will not consider the suitability of parole of any inmate whose parole eligibility date is close in time to the inmate's end of sentence date violates the separation of powers guaranteed by article second of the state constitution (count five).

Our Supreme Court rejected all of those claims. The court concluded that the habeas court lacked jurisdiction over the petitioner's due process and state liberty interest claims because "the petitioner lacked a vested right in the application of the risk reduction credit previously granted to advance his parole eligibility date" and because "the procedure by which the board exercises its discretion to award or deny [a] petitioner parole does not implicate a vested liberty interest." Id., 373. The court further concluded that the habeas court had properly dismissed the petitioner's ex post facto claims because neither P.A. 13-3 nor P.A. 13-247 increased the punishment imposed on the petitioner, who had committed his offenses prior to the enactment of P.A. 11-51. Id., 377–78. The court also held that the habeas court had properly concluded that it lacked jurisdiction over the separation of powers claim "for a host of reasons . . . ." Id., 381–82. Specifically, the court reasoned that, "[p]utting aside the significant problem that the petitioner has failed to allege that the determination of parole eligibility is a power solely vested in the legislature and may not be delegated to the executive branch, an essential element of a viable separation of powers claim . . . he ignores the fact that the circumstance that he claims purportedly would give rise to such a constitutional defect is extraordinarily speculative. He not only would have to earn the maximum possible credit, but would also have to have had none of the credit revoked, both acts wholly left to the respondent's discretion. Even if such a circumstance could arise, any claim based on such facts would be premature." (Citation omitted.) Id., 381.

As to the equal protection claims in *Perez*, the court considered only whether the disparate treatment under § 18-98e furthered a legitimate governmental purpose because the "application of earned risk reduction credit to advance an inmate's parole eligibility date does not

impinge on a fundamental right" and because "subsets of inmates differentiated only by the timing of when they were considered for parole are . . . not a suspect class." Id., 385. The court determined that there were rational bases for the classifications under both statutes and, therefore, concluded that neither "the application of earned risk reduction credit to parole eligibility based on whether an inmate had already been granted parole prior to July 1, 2013," nor "the exclusion of indigent individuals held in presentence confinement from the earned risk reduction credit scheme" violates equal protection. Id., 385–86. Accordingly, our Supreme Court held that the petitioner in *Perez* had failed to state an equal protection claim for which habeas relief could be granted regarding either his as applied challenge to the parole eligibility provision of § 54-125a or his facial challenge to § 18-98e. Id.

Finally, as to the petitioner's claim that "the respondent's construction of the 2013 amendments is contrary to the language of § 54-125a and the intent of the legislature," the court concluded that the petitioner's "conclusory allegations in the petition . . . failed to allege a statutory application claim upon which habeas relief could be granted. Further, even if [it assumed] that the petitioner had sufficiently alleged the statutory claims he [advanced in his appellate brief], and that those claims were claims upon which habeas relief could be granted, the petitioner's claims would be premature. . . . [That is], [i]f the board decides to hold a hearing or the petitioner does not have any earned risk reduction credit remaining, then retroactive application of the 2013 amendments would not create an actual injury to the petitioner." (Citations omitted.) Id., 387–88.

Following the release of that decision, the petitioner in the present case filed the operative, revised amended petition (operative petition) on October 31, 2017. The operative petition included thirteen counts related to

the application of the risk reduction credit and parole eligibility statutes, as amended in 2013. The petitioner alleged that the retroactive application of § 54-125a, as amended by P.A. 13-247, violates (1) the ex post facto clause of the federal constitution (count one); (2) General Statutes § 55-3, which provides that "[n]o provision of the general statutes, not previously contained in the statutes of the state, which imposes any new obligation on any person or corporation, shall be construed to have a retrospective effect" (count two); (3) his right to due process (count three); and (4) his right to personal liberty pursuant to article first, § 9, of the Connecticut constitution (count four). The petitioner similarly alleged that the retroactive application of § 54-125a, as amended by P.A. 13-3, violates (1) § 55-3 and his right to due process under the state and federal constitutions (count five); (2) his right to due process under the state and federal constitutions (count six); (3) the separation of powers guaranteed by article second of the state constitution (count seven); and (4) his right of personal liberty, presumably also under article first, § 9, of the Connecticut constitution (count eight). The petitioner also alleged that (1) the respondent has applied an incorrect interpretation of § 18-98e to exclude a retroactive award of risk reduction credit for time the petitioner spent in presentence confinement (count nine); (2) the application of that incorrect interpretation of § 18-98e violates his right to the equal protection of the law under the state and federal constitutions (count ten) and his right to rely on governmental representations as guaranteed by the due process clauses of the state and federal constitutions pursuant to *Santobello* v. *New York*, 404 U.S. 257, 92 S. Ct. 495, 30 L. Ed. 2d 427 (1971) (count eleven); (3) the respondent breached the petitioner's offender accountability plan[4] with regard to

---

[4] An offender accountability plan "is a form, signed by an inmate, that designates the specific programs that the inmate should participate in during his or her period of incarceration in order to avoid negatively impacting the inmate's earning of risk reduction credits, chances of obtaining supervised

the amount of risk reduction credit awarded to the petitioner and the application of that credit to advance his parole eligibility and end of sentence dates (count twelve); and (4) the petitioner is entitled to enforcement of the respondent's "clear and definite promise" to award the petitioner risk reduction credit to advance his parole eligibility and end of sentence dates based on his detrimental reliance on that promise (count thirteen).

On March 19, 2018, without providing the parties notice or an opportunity to be heard, the habeas court, *Hon. Edward J. Mullarkey*, judge trial referee, dismissed, sua sponte, the operative petition pursuant to subsections (1), (2) and (5) of Practice Book § 23-29.[5] In its memorandum of decision, the court relied on *Perez* v. *Commissioner of Correction*, supra, 326 Conn. 357, and *Petaway* v. *Commissioner of Correction*, 160 Conn. App. 727, 125 A.3d 1053 (2015), cert. dismissed, 324 Conn. 912, 153 A.3d 1288 (2017). After noting that the petitioner, like the petitioners in *Perez* and *Petaway*, had been sentenced for offenses he committed prior to the effective date of P.A. 11-51, the court reasoned that, "[b]ecause the petitioner has no right to earn and receive discretionary [risk reduction credit], and any changes, alterations and even the total elimination of

community release, or being granted parole. Although it notes that '[f]ailure to comply with the [plan's] recommendations . . . shall negatively impact your earning of Risk Reduction Earned Credit,' it does not specify that the inmate will otherwise receive five days of risk reduction credit per month." *Green* v. *Commissioner of Correction*, 184 Conn. App. 76, 91 n.8, 194 A.3d 857, cert. denied, 330 Conn. 933, 195 A.3d 383 (2018).

[5] Practice Book § 23-29 provides in relevant part: "The judicial authority may, at any time, upon its own motion or upon motion of the respondent, dismiss the petition, or any count thereof, if it determines that:

"(1) the court lacks jurisdiction;

"(2) the petition, or a count thereof, fails to state a claim upon which habeas corpus relief can be granted; [and] . . .

"(5) any other legally sufficient ground for dismissal of the petition exists."

[risk reduction credit] at most can only revert the petitioner [back] to the precise measure of punishment in place at the time of the offense, the court concludes that it lacks subject matter jurisdiction over the habeas corpus petition and that the petition fails to state a claim for which habeas corpus relief can be granted.''

After the habeas court granted his petition for certification to appeal and denied his motion for reconsideration, the petitioner appealed, challenging the judgment of dismissal. This court ordered that the appeal be stayed pending disposition of related appeals. While the petitioner's appeal was pending, our Supreme Court issued decisions in *Brown* v. *Commissioner of Correction*, 345 Conn. 1, 282 A.3d 959 (2022), and in *Brown*'s companion case, *Boria* v. *Commissioner of Correction*, 345 Conn. 39, 282 A.3d 433 (2022), holding that, before dismissing a habeas petition pursuant to Practice Book § 23-29, the habeas court must provide the petitioner notice of its intention to do so and an opportunity to file a written response to the proposed basis for dismissal. See *Boria* v. *Commissioner of Correction*, supra, 42–43; *Brown* v. *Commissioner of Correction*, supra, 16–17; see also *Hodge* v. *Commissioner of Correction*, 216 Conn. App. 616, 617–18, 285 A.3d 1194 (2022) (reversing judgment of dismissal pursuant to § 23-29 and explaining that habeas court must comply with *Brown* and *Boria* by providing petitioner notice and opportunity to submit written response to proposed basis for dismissal). Following those decisions, the stay in the petitioner's prior appeal was lifted, and the petitioner filed his brief. The respondent subsequently filed, with the agreement of the petitioner's counsel, a motion requesting that this court reverse the judgment of dismissal and remand for further proceedings. This court granted the motion, reversed the judgment of the habeas court, and remanded the case for further proceedings.

On remand, the court, *Newson, J.*, issued an order notifying the parties that he would consider whether to dismiss the petition or any count thereof pursuant to subsections (1), (2) and (5) of Practice Book § 23-29, and the court afforded the parties thirty days within which to file a written response to the proposed dismissal. The respondent filed a brief in support of dismissal, and the petitioner filed an objection to the court's motion to dismiss with a supporting memorandum of law.

In his brief in support of dismissal, the respondent noted that the petitioner had committed his crimes "long before [P.A. 11-51] became effective on July 1, 2011," and asserted that "all cases uniformly hold that the habeas court lacks subject matter jurisdiction if the crimes were committed prior to July 1, 2011." The respondent argued that the petitioner's claims related to the retroactive application of P.A. 13-3 and P.A. 13-247 "were thoroughly discussed and rejected" by our Supreme Court in *Perez* v. *Commissioner of Correction*, supra, 326 Conn. 370–74, and by this court in *Rivera* v. *Commissioner of Correction*, 186 Conn. App. 506, 200 A.3d 701 (2018), cert. denied, 331 Conn. 901, 201 A.3d 402 (2019), and *Petaway* v. *Commissioner of Correction*, supra, 160 Conn. App. 734. For the reasons stated in those decisions, the respondent claimed that the petitioner does not have a cognizable liberty interest in parole eligibility or a protected liberty interest in earned risk reduction credit sufficient to invoke habeas jurisdiction. In addition, the respondent submitted an affidavit from a Department of Correction employee who averred that the petitioner had been released from the respondent's custody on July 7, 2021, and that his five years of probation began at that time. Relying on that fact, the respondent claimed the court should dismiss the petition as moot pursuant to Practice Book

§ 23-29 (4).[6] The respondent argued that, insofar as the operative petition sought "as relief an earlier parole hearing, that relief can no longer be afforded as practical relief because the petitioner has already [been] discharged . . . . Any and all parole issues and/or [risk reduction credit] issues raised in this case have become moot."

In his memorandum of law opposing dismissal, the petitioner acknowledged that parole eligibility and earned risk reduction credits did not implicate a protected liberty interest but argued that "[i]nfringement on a liberty interest is not the *only* claim that establishes jurisdiction in the habeas court." (Emphasis in original.) Without explanation, the petitioner argued the legal sufficiency of the first amended petition instead of the operative petition. Specifically, the petitioner argued that, in counts sixteen and seventeen of the first amended petition, he "allege[d] a breach of contract and promissory estoppel" based on his offender accountability plan, "which renders [the] conditions of his detention unlawful. . . . [A]ll [of the] other allegations include claims, in counts [one through fifteen], that render the conditions under which the [respondent] continues to detain the petitioner unlawful. The . . . violations of due process, equal protection, and violation of his right to personal liberty make allegations that, if proven true, render the petitioner's continued detention unlawful." As to his ex post facto claims, the petitioner argued that, in counts six and seven of the first amended petition, he asserted legally sufficient ex post facto claims based on the retroactive application to him of the 2013 amendments. The petitioner also argued that the court had jurisdiction to adjudicate the "statutory construction and/or interpretation" claims in counts one, two, three,

---

[6] Practice Book § 23-29 (4) provides that a habeas court may dismiss the petition, or any count thereof, if it determines that "the claims asserted in the petition are moot or premature . . . ."

four, eight, nine, twelve, and fifteen of the first amended petition because the respondent's application of his incorrect interpretation of the relevant statutes rendered the petitioner's detention unlawful. Last, the petitioner asserted that the habeas court had jurisdiction to adjudicate his separation of powers claim in count five of the first amended petition.

After considering the parties' written responses, the court rendered judgment of dismissal. The court found that Judge Mullarkey's March 23, 2018 dismissal of the petition pursuant to Practice Book § 23-29 (1), (2) and (5) remained "legally and factually" correct and adopted that decision as its own. The court's order stated that the case was dismissed "for, among other reasons, failing to state a claim." The court subsequently denied the petitioner's petition for certification to appeal, and this appeal followed.

I

On appeal, the petitioner claims that the habeas court abused its discretion by denying his petition for certification to appeal.[7] He argues that his "claims relating

_____

[7] We note that the petitioner also argues that, "[w]hen [his] case was first dismissed in 2018, approximately [twenty-five] other cases that raised similar claims were also dismissed. The sheer number of cases pending—both in 2018 and currently—demonstrates that these are important questions that deserve the opportunity to proceed, and the law has not been clearly settled. Further, the issues involved are clearly debatable among jurists of reason. This court's recent decisions in *Brewer* v. *Commissioner of Correction*, [218 Conn. App. 281, 291 A.3d 637 (2023)], and *Leffingwell* v. *Commissioner of Correction*, [218 Conn. App. 216, 291 A.3d 641 (2023)], both of which dealt with [risk reduction earned credit] claims where the petitioner's offense date preceded the implementation of [P.A. 11-51], demonstrate that these issues are actively and necessarily being litigated and are potentially being decided in conflicting manners."

The petitioner appears to conflate the procedural issue involved in his prior appeal—that is, whether the habeas court improperly dismissed the petition without providing the petitioner with notice and an opportunity to submit a written response to the proposed dismissal—with the issue involved in the present appeal—whether the habeas court properly dismissed the petition *after* providing the petitioner notice and an opportunity to be heard. Indeed, in both *Brewer* and *Leffingwell*, this court simply concluded that

to [risk reduction credit]—with issues including ex post facto, due process, separation of powers, statutory construction, and contractual obligations—are claims that are cognizable and have been heard and litigated in the habeas courts previously. . . . The habeas court has routinely heard cases relating to [risk reduction credit], and a liberty interest is not always a prerequisite for subject matter jurisdiction. . . . Ex post facto claims relating to [risk reduction earned credit] are cognizable legal claims in Connecticut. . . . The petitioner has clearly stated claims upon which relief can be granted. The reasons for the dismissal are not legally or factually sound . . . ." (Citations omitted.) We are not persuaded.

"Faced with a habeas court's denial of a petition for certification to appeal, a petitioner can obtain appellate review of the [disposition] of his . . . petition for habeas corpus only by satisfying the two-pronged test enunciated by our Supreme Court in *Simms* v. *Warden*, 229 Conn. 178, 640 A.2d 601 (1994), and adopted in *Simms* v. *Warden*, 230 Conn. 608, 612, 646 A.2d 126 (1994). First, he [or she] must demonstrate that the denial of his [or her] petition for certification constituted an abuse of discretion. . . . Second, if the petitioner can show an abuse of discretion, he [or she] must

our Supreme Court's decisions in *Brown* v. *Commissioner of Correction*, supra, 345 Conn. 1, and *Boria* v. *Commissioner of Correction*, supra, 345 Conn. 39, required reversals of the judgments of dismissal because the petitioner had not been given notice or an opportunity to submit a written response before the habeas court dismissed the petitions. See *Brewer* v. *Commissioner of Correction*, supra, 218 Conn. App. 286 (adopting reasoning and conclusions in *Leffingwell*); *Leffingwell* v. *Commissioner of Correction*, supra, 218 Conn. App. 225 ("court must comply with the procedures set forth in *Brown* and *Boria* by providing the petitioner with prior notice of its proposed basis for dismissal and affording the petitioner an opportunity to provide a written response"). Accordingly, the petitioner's reliance on those cases is misplaced, as they do not demonstrate that the substantive issues raised in the present appeal are debatable among jurists of reason.

then prove that the decision of the habeas court should be reversed on its merits. . . .

"To prove an abuse of discretion, the petitioner must demonstrate that the [resolution of the underlying claim involves issues that] are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further. . . .

"In determining whether the habeas court abused its discretion in denying the petitioner's request for certification, we necessarily must consider the merits of the petitioner's underlying claims to determine whether the habeas court reasonably determined that the petitioner's appeal was frivolous. In other words, we review the petitioner's substantive claims for the purpose of ascertaining whether those claims satisfy one or more of the three criteria . . . adopted by [our Supreme Court] for determining the propriety of the habeas court's denial of the petition for certification." (Internal quotation marks omitted.) *Stephenson* v. *Commissioner of Correction*, 203 Conn. App. 314, 322–23, 248 A.3d 34, cert. denied, 336 Conn. 944, 249 A.3d 737 (2021).

For the reasons stated in part II of this opinion, we conclude that the petitioner has failed to demonstrate that the habeas court abused its discretion in denying certification to appeal because it is undebatable that the petitioner's underlying claims are without merit.

II

The petitioner's substantive claim on appeal is that the habeas court improperly dismissed his petition pursuant to Practice Book § 23-29 (1), (2) and (5). More specifically, he claims that the court (1) relied on a clearly erroneous factual finding and incorrect conclusions of law in dismissing the petition, (2) improperly concluded that it lacked subject matter jurisdiction over

the petitioner's claims and that his claims were legally insufficient, and (3) should have afforded the petitioner an opportunity to amend the operative petition before dismissing it.[8]

As an initial matter, we set forth our standard of review and relevant legal principles. "[T]o invoke successfully the jurisdiction of the habeas court, a petitioner must allege an interest sufficient to give rise to habeas relief. . . . We have long held that because [a] determination regarding a trial court's subject matter jurisdiction is a question of law, our review is plenary. . . . Likewise, [w]hether a habeas court properly dismissed a petition pursuant to Practice Book § 23-29 (2), on the ground that it fails to state a claim upon which habeas corpus relief can be granted, presents a question of law over which our review is plenary." (Citations omitted; internal quotation marks omitted.) *Perez* v. *Commissioner of Correction*, supra, 326 Conn. 368.

A

As to the alleged clearly erroneous factual finding, the petitioner argues that Judge Mullarkey's memorandum of decision, which was adopted by Judge Newson, failed to "address the fact that the petitioner was serving a five year consecutive sentence, and therefore was incarcerated through 2021, and will be serving his probationary period through 2026. Based on the original factual finding that did not note the petitioner's consecutive sentence, it appears as though the petitioner would have completed both his incarceration and probationary period, and it would appear he is not able to receive any practical relief in this case. . . . The omission in the factual findings is significant because the petitioner is still in a position to [receive] practical relief from the court, since an award of [risk reduction earned

[8] For ease of discussion, we address the petitioner's claims in a different order than that in which they are set forth in his principal appellate brief.

credit] could be applied to shorten the petitioner's probationary period." In so arguing, the petitioner has set up and knocked down a proverbial straw man, as the habeas court did not dismiss the petition as moot. Thus, although we agree that, in light of his period of probation, the petitioner's release from confinement does not render the petition or this appeal moot,[9] that has no bearing on the propriety of the court's judgment of dismissal, which was not based on mootness.[10]

B

Next, the petitioner claims that the habeas court relied on two incorrect conclusions of law in dismissing the petition. First, the petitioner argues that the court incorrectly concluded that it lacked subject matter jurisdiction "[b]ecause the petitioner has no right to earn and receive discretionary [risk reduction earned credit], and any changes, alterations and even the total elimination of [risk reduction earned credit] at most can only revert the petitioner to the precise measure of punishment in place at the time of the offense . . . ." According to the petitioner, this is inaccurate because the respondent "does not have the discretion to eliminate [risk reduction earned credit] altogether. That authority belongs to the legislature." Second, the petitioner claims that the court's "focus on a liberty interest as a threshold to habeas jurisdiction is a misstatement of the law." Neither claim is persuasive.

---

[9] While this appeal was pending, the respondent moved to dismiss the appeal as moot based on the petitioner's release from the respondent's custody. This court, however, denied the motion to dismiss. See, e.g., *Brewer* v. *Commissioner of Correction*, 218 Conn. App. 281, 285 n.5, 291 A.3d 637 (2023) (because petitioner was serving period of probation, release from confinement did not render appeal moot).

[10] Although the respondent argued that the court should dismiss the petition as moot pursuant to Practice Book § 23-29 (4), neither Judge Mullarkey's decision nor Judge Newson's subsequent order adopting that decision referred to mootness or § 23-29 (4).

The court's statement regarding the discretionary nature of the risk reduction earned credit program is accurate, and the court did not conclude that the respondent could eliminate the risk reduction earned credit program entirely. See *Perez* v. *Commissioner of Correction*, supra, 326 Conn. 385 ("the award and application of risk reduction credit is not constitutionally required and is a matter of legislative grace"); *Green* v. *Commissioner of Correction*, 184 Conn. App. 76, 91–92, 194 A.3d 857 (noting "legislature's clear intent that the [risk reduction earned credit] program be discretionary in nature"), cert. denied, 330 Conn. 933, 195 A.3d 383 (2018). The court simply observed, consistent with our Supreme Court's reasoning in *Perez*, that, because the petitioner committed his offense before P.A. 11-51 became effective, the 2013 amendments "simply returned the petitioner to the position that he was in at the time of his offense." *Perez* v. *Commissioner of Correction*, supra, 378.

As to the habeas court's allegedly improper focus on a liberty interest, although the petitioner is correct that a liberty interest is not necessary to establish all of the claims raised in the operative petition, our Supreme Court made clear in *Perez* that a cognizable liberty interest is "[a]n essential predicate to" claims based on violations of a petitioner's right to due process under the state and federal constitutions and the right to personal liberty under article first, § 9, of the Connecticut constitution. Id., 370. Accordingly, the court properly focused on the absence of a vested liberty interest in dismissing the petitioner's due process and state liberty interest claims in counts three, four, five, six, and eight of the operative petition. See id., 373–74.

C

As to the remaining claims in the operative petition, the petitioner broadly argues that, "[e]ven if [he] does

not have a liberty interest in [risk reduction credit], his claims still fall within the jurisdiction of the habeas court." He specifically argues that the court improperly dismissed his (1) ex post facto claim in count one of the operative petition, (2) "separation of powers claims" in count seven of the operative petition, (3) "claims relating to statutory interpretation and whether his recalculated sentence and parole eligibility date were appropriately calculated under the statute" in counts two and nine of the operative petition, and (4) "contract violation claims" in counts eleven, twelve, and thirteen of the operative petition. All of these claims have been squarely rejected either by this court or by our Supreme Court.[11]

We note that the habeas court did not specify the grounds for dismissal of each count in the operative petition. "Nonetheless, if the habeas court reached the correct decision, but on mistaken grounds, this court will sustain the habeas court's action if proper grounds exist to support it. . . . Therefore, we conduct a plenary review to determine if the habeas court lacked jurisdiction over each claim raised in the [operative] petition, and we analyze the petitioner's claims together only insofar as they turn on the same legal framework." (Citation omitted.) *Perez* v. *Commissioner of Correction*, supra, 326 Conn. 369.

In support of his ex post facto claim predicated on the retroactive application of P.A. 13-247, the petitioner relies on *Breton* v. *Commissioner of Correction*, 330 Conn. 462, 464–66, 479, 196 A.3d 789 (2018), in which our Supreme Court held that the 2013 amendments to § 54-125a (b) (2), when applied to a petitioner who committed his offenses *after* the legislature passed P.A.

---

[11] In his appellate briefs, the petitioner fails to engage in any meaningful analysis of the merits of his claims in the operative petition. Instead, he offers only conclusory assertions regarding their legal sufficiency.

11-51, violated the ex post facto clause of the federal constitution. The petitioner's reliance on *Breton* is misplaced, as the court specifically noted that "only a relatively small percentage of inmates—namely, those inmates who . . . are incarcerated for committing a violent crime between 2011 and 2013—will be affected by our holding today." Id., 485. Thus, because the petitioner in the present case committed his offenses *before* P.A. 11-51 became effective, *Breton* is inapposite. *Perez*, however, is dispositive.

In *Perez*, our Supreme Court rejected the same ex post facto claim alleged by the petitioner in the present case—that the retroactive application of P.A. 13-247 to the petitioner violated the ex post facto clause. In rejecting that claim, our Supreme Court reasoned that, "[b]ecause the parole hearing provision does not alter the calculation of when an inmate is eligible for parole, and because the board must still consider the inmate's parole suitability at that time, the elimination of a mandatory hearing in the 2013 parole hearing provision does not increase the punishment imposed for the petitioner's offense. Therefore, the habeas court lacked jurisdiction to consider the petitioner's ex post facto claim concerning the parole hearing provision." *Perez* v. *Commissioner of Correction*, supra, 326 Conn. 377–78. Accordingly, the habeas court properly dismissed count one of the operative petition for lack of subject matter jurisdiction in the present case. See id.; see also *Petaway* v. *Commissioner of Correction*, supra, 160 Conn. App. 733 (holding that petitioner failed to state colorable ex post facto claim when he failed to "claim that a change in the law after [he committed his offense] extended the length of his incarceration or delayed the date of his first eligibility for parole consideration beyond the time periods in existence at the time of his criminal conduct").

*Perez* also controls the petitioner's separation of powers and equal protection claims in counts seven and ten, respectively, of the operative petition. In count seven, the petitioner alleged that "[t]he respondent's interpretation and application of . . . § 54-125a, as amended by P.A. 13-3, combined with the [board's] policy . . . has changed the petitioner's sentence into one as to which he is not eligible to be considered for release on parole." As in *Perez*, "the circumstance that he claims purportedly would give rise to such a constitutional defect is extraordinarily speculative. He not only would have to earn the maximum possible credit, but would also have to have had none of the credit revoked, both acts wholly left to the respondent's discretion. Even if such a circumstance could arise, any claim based on such facts would be premature." *Perez* v. *Commissioner of Correction*, supra, 326 Conn. 381. Moreover, because the petitioner has been released from incarceration and has begun serving his period of probation, it is possible that the petitioner never will be required to serve the suspended portion of his sentence, which makes the circumstance alleged to give rise to the constitutional defect in the present case even more "extraordinarily speculative" than the circumstance alleged in *Perez*. See id. Accordingly, the court properly dismissed that claim.

In count ten of the operative petition, the petitioner alleged that the respondent's interpretation and application of § 18-98e to preclude the retroactive award of risk reduction credit for time he spent in presentence confinement violates his right to the equal protection of the law. In *Perez*, the petitioner similarly claimed that § 18-98e violates the equal protection clause because it does not allow indigent individuals who are held in presentence confinement to earn risk reduction credits. Id., 382. Our Supreme Court held that the petitioner's equal protection claim in *Perez* failed to state a claim

for which habeas relief could be granted because there was a rational basis for the exclusion of indigent individuals held in presentence confinement from the risk reduction credit program. See id., 386. Consequently, the habeas court properly dismissed count ten of the operative petition for failure to state a claim on which habeas relief could be granted.

In count two of the operative petition, the petitioner alleged that the retroactive application of P.A. 13-247 to him violates § 55-3. This "statutory interpretation claim" suffers from the same deficiencies identified by the court in *Perez*, in which the petitioner "summarily allege[d] that the respondent's construction of the 2013 amendments is contrary to the language of § 54-125a and the intent of the legislature without pointing to any particular statutory language being contravened or identifying the intent of the legislature in enacting either the 2011 or 2013 amendments." *Perez* v. *Commissioner of Correction*, supra, 326 Conn. 387. Moreover, as the court explained in *Perez*, even if the petitioner in that case had stated a statutory application claim upon which habeas relief could be granted, his challenge to P.A. 13-247 would be premature because it was impossible to determine whether the board would decline to conduct a hearing on the petitioner's parole eligibility date. Id., 387–88. The same reasoning applies in the present case with even greater force because, as noted previously in this opinion, the petitioner presently is serving a period of probation and, thus, is not eligible for parole. Consequently, the habeas court properly dismissed count two of the operative petition.

In count nine of the operative petition, the petitioner alleged that the respondent incorrectly interpreted § 18-98e to exclude a retroactive award of risk reduction credit for time the petitioner spent in presentence confinement. This court rejected this precise claim in *Torres* v. *Commissioner of Correction*, 175 Conn. App. 460,

471, 167 A.3d 1020 (2017), cert. denied, 328 Conn. 912, 179 A.3d 1271 (2018). We held that § 18-98e "clearly and unambiguously shows that the legislature intended for only sentenced inmates to be eligible to earn risk reduction earned credits." Id. Consequently, there is no merit to the petitioner's statutory interpretation claim, and the court, therefore, properly dismissed count nine for failure to state a claim upon which habeas relief could be granted.

The court also properly dismissed the petitioner's claims in counts eleven, twelve, and thirteen of the operative petition. Specifically, in count eleven, the petitioner alleged that "[t]he respondent's interpretation and application of . . . § 54-125a, as amended in 2013, deprives the petitioner of his right to rely upon governmental representations, protected by the due process clauses of the state and federal constitutions, as explained in *Santobello* v. *New York*, [supra, 404 U.S. 257]." In *Dinham* v. *Commissioner of Correction*, 191 Conn. App. 84, 213 A.3d 507, cert. denied, 333 Conn. 927, 217 A.3d 995 (2019), a petitioner similarly "only broadly alleged, citing to *Santobello*, that he ha[d] a liberty interest in being able to rely on governmental representations in [deciding] how to resolve his pending case, without any factual allegations of what the representations were or who made them." (Internal quotation marks omitted.) Id., 93. This court concluded that, in light of the petitioner's failure to plead any factual basis to support his claim, the habeas court properly dismissed it for failure to state a claim upon which habeas relief could be granted. See id., 93–94. Given the same pleading deficiency in the present case, we conclude that the habeas court properly dismissed count eleven for failure to state a claim upon which habeas relief can be granted.

In count twelve of the operative petition, the petitioner alleged that the respondent had breached the

petitioner's offender accountability plan with regard to the amount of risk reduction credit awarded to the petitioner and the application of that credit to advance his parole eligibility and end of sentence dates. In count thirteen of the operative petition, the petitioner alleged that he is entitled to enforcement of the respondent's "clear and definite promise" to award the petitioner risk reduction credit to advance his parole eligibility and end of sentence dates based on his reliance in performing the actions specified in his offender accountability plan. Neither of these claims implicates a cognizable liberty interest. Indeed, this court has rejected breach of contract claims predicated on an offender accountability plan in both *Jordan* v. *Commissioner of Correction*, 190 Conn. App. 557, 563–65, 211 A.3d 115, cert. denied, 333 Conn. 905, 215 A.3d 159 (2019), and *Green* v. *Commissioner of Correction*, supra, 184 Conn. App. 91.

In *Green*, a petitioner claimed that he had entered into a binding contract with the respondent that allegedly conferred on him a contractual right to earn risk reduction credit. Id., 84. This court concluded that the petitioner's breach of contract claim failed to invoke the habeas court's jurisdiction because it implicated, at most, "a contractual interest in such [risk reduction credit] rather than a constitutionally protected liberty interest." Id., 91. In *Jordan*, a petitioner similarly argued that he had "a contractual interest in earning risk reduction credit by virtue of his alleged agreement with the respondent to adhere to his offender accountability plan in exchange for risk reduction credit." *Jordan* v. *Commissioner of Correction*, supra, 190 Conn. App. 562. Consistent with our decision in *Green*, we concluded in *Jordan* that the habeas court properly dismissed the breach of contract claim for lack of subject matter jurisdiction because it "does not give rise to a cognizable liberty interest . . . ." (Footnote omitted.) Id., 565.

We further explained that, "[e]ven if the court had subject matter jurisdiction over the petitioner's claim, it still properly dismissed the petitioner's petition for its failure to state a claim on which habeas relief can be granted because there was no contract formed between the petitioner and the respondent. Nowhere in the offender accountability plan is there a promise made by the respondent that, in exchange for adherence to the plan, the petitioner would receive a certain amount of risk reduction credit per month. Accordingly, a contract was not formed between the parties because there was no bargained for exchange." Id., 565 n.9.

The same reasoning employed in *Green* and *Jordan* applies in the present case, as the petitioner's breach of contract and promissory estoppel claims are nearly identical to the claims we rejected in those cases. Accordingly, the habeas court properly dismissed counts twelve and thirteen of the operative petition.

D

The petitioner's final claim is that he "should have been afforded the opportunity to amend his petition prior to dismissal." He argues that the court's order notifying the parties of the proposed grounds for dismissal "did not leave room for the petitioner to amend his petition prior to the issue of dismissal being addressed."

The following additional procedural history is relevant to the petitioner's claim. On February 22, 2023, this court issued its order reversing Judge Mullarkey's judgment of dismissal and remanding the case for further proceedings. Approximately five weeks later, on March 30, 2023, Judge Newson issued his order regarding the proposed grounds for dismissal, which provided

that the parties had until May 1, 2023, to file a written response for the court to consider.

In his principal appellate brief, the petitioner acknowledges that he still was able to amend his petition pursuant to Practice Book § 23-32 because the respondent never filed a return in the habeas court.[12] Nevertheless, the petitioner neither amended the operative petition during the intervening five weeks between this court's remand order and Judge Newson's order, nor sought permission to amend the operative petition before filing his memorandum of law opposing dismissal. On appeal, the petitioner fails to provide any explanation for his failure to pursue either course of action. Rather, the petitioner appears to suggest that the court had an obligation to provide him with an opportunity to amend the operative petition as part of its order regarding the proposed dismissal. As this court previously has explained, however, because "it is not the court's obligation to amend pleadings sua sponte, the habeas court was not required to save the petition from dismissal." *Foote* v. *Commissioner of Correction*, 170 Conn. App. 747, 756, 155 A.3d 823, cert. denied, 325 Conn. 902, 155 A.3d 1271 (2017); see also *Kosinski* v. *Carr*, 112 Conn. App. 203, 210 n.7, 962 A.2d 836 (2009) ("Cases that uphold a trial court's exercise of its discretion to order an amendment of the pleadings do not establish that the court was required to undertake such action sua sponte. . . . Cases addressing a trial court's decision to grant or deny a *litigant's* request for amendment of the pleadings . . . do not address a court's duty to intervene *without* timely action by a litigant." (Citations omitted; emphasis in original.)). Because the petitioner neglected to take any action to pursue amending the operative petition, the habeas court did not

[12] Practice Book § 23-32 provides: "The petitioner may amend the petition at any time prior to the filing of the return. Following the return, any pleading may be amended with leave of the judicial authority for good cause shown."

err in failing to sua sponte allow for an unsolicited amendment to the petition.[13]

## III

In sum, on the basis of our review of the record and the relevant legal principles and precedent, we cannot conclude that the resolution of the petitioner's claims involves issues that are debatable among jurists of reason, are adequate to deserve encouragement to proceed

---

[13] Notwithstanding his failure to request an amendment, the petitioner argued in his principal appellate brief that "this court can nevertheless consider whether the petitioner is entitled to relief because his due process, ex post facto, and separation of powers claims, which are of constitutional magnitude, can be considered under [*State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), as modified by *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015)]. The petitioner's statutory construction and contractual obligations claims can be reviewed for plain error" pursuant to Practice Book § 60-5. Without explanation, the petitioner then proceeds to discuss his first amended petition, which was replaced by the operative petition. Specifically, the petitioner stated that he "referenced the [first] amended petition, which contained more and different claims than the [operative] petition, in [his memorandum of law opposing dismissal]. [That] memorandum makes clear that the petitioner believed review of more comprehensive legal issues was necessary for the court to make an appropriate determination regarding jurisdiction."

In his reply brief, the petitioner explained that the first amended petition "included statutory construction and contractual [obligation] claims that were omitted from the later petition. The petitioner is merely arguing that this court can properly consider those claims because they were raised by the petitioner in his objection to the motion to dismiss." The petitioner, however, fails to provide any analysis of these so-called "statutory construction and contractual [obligation] claims," and he fails to explain how those claims differed in any respect from the statutory interpretation and contractual obligation claims that he asserted in the operative petition, and which we addressed in part II C of this opinion. Furthermore, "[w]hen an amended pleading is filed, it operates as a waiver of the original pleading. The original pleading drops out of the case and although it remains in the file, it cannot serve as the basis for any future judgment . . . . Thus, the petitioner's amended petition supersedes his initial petition and, accordingly, he cannot rely on the factual allegations made solely in his initial petition." (Citation omitted; internal quotation marks omitted.) *Dinham* v. *Commissioner of Correction*, supra, 191 Conn. App. 94 n.13. Accordingly, we decline the petitioner's invitation to revive his first amended complaint, which was superseded by the operative petition.

further or that a court could resolve them in a different manner. Therefore, the habeas court did not abuse its discretion in denying the petitioner's petition for certification to appeal.

The appeal is dismissed.

In this opinion the other judges concurred.